IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior District Judge Richard P. Matsch

Civil Action No. 05-cv-00664-RPM

STEVE STUMBO,

        Plaintiff,

v.

EASTMAN OUTDOORS, INC.,

        Defendant

---

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT BY DEFENDANT
EASTMAN OUTDOORS, INC.

---

The plaintiff is the inventor of a collapsible blind that is the subject of U.S. Patent No. 5,628,338, issued on May 13, 1997 (the '338 Patent"). The field of invention of the '338 Patent relates to portable and collapsible shelters or blinds for use by sportsmen, particularly hunters and photographers. ('338 Patent, col. 1, ll. 4-7). The plaintiff's invention is manufactured and distributed by Double Bull Archery, L.L.C. pursuant to a license. Defendant Eastman Outdoors, Inc. ("Eastman") markets and sells a portable collapsible hunting blind known as the Carbon Venture Blind. The plaintiff alleges that Eastman's Carbon Venture Blind infringes the '338 Patent, and he seeks damages and injunctive relief. Eastman denies infringement and has counterclaimed, seeking declarations of invalidity and non-infringement.

Eastman moved for summary judgment as to all of the plaintiff's claims, arguing that its Carbon Venture Blind does not infringe either literally or under the doctrine of equivalents. On

December 28, 2006, the court heard argument on this motion and a similar motion filed by

Ameristep Corporation, the defendant in a related case, *Stumbo v. Ameristep Corporation*, Civil

Action No. 05-cv-00663-RPM.

The '338 Patent claims a cube-shaped hunting blind having four side walls and a top.  Its

fabric cover is supported by a framework of five support members – one for each side wall and

the top.  Each of the five support members has four legs connected at one end to a central hub.

The legs extend outward from the hub and are attached to the hub by a hinged connection.  This

hub-and-strut assembly is foldable, allowing the blind to be collapsed and erected easily.  ('338

Patent, col. 1, l. 50-col. 2, l. 22).

Eastman's Carbon Venture Blind is also a cube-shaped hub-style blind.  The central issue

is whether the Eastman Carbon Venture Blind has a "closable vertical opening," as required by the

nine claims of the '338 Patent.  Claims 1 and 7 are the independent claims of the patent.  Claim 1

reads:

> 1.  A portable and collapsible blind or shelter structure comprising:
>
> (a) a flexible fabric cover having four side walls and a top; wherein each side wall includes at least one window opening; wherein each said side wall includes opposite side edges and a top edge; wherein side edges of adjacent side walls are integral with each other; and *further including a closable vertical opening along one of said side edges*; wherein the perimeter of each side wall and the top is non-stretchable; and
>
> (b) a framework comprising five support members; wherein each side support member comprises four resilient leg members hingedly connected at one end to a central hub; wherein one said support member engages and supports said top; and wherein said leg members connected to each said hub can be pivoted towards each other to collapse said structure.

('338 Patent, col. 4, ll. 2-21).  Claim 7 reads:

7.  A portable and collapsible blind or shelter structure comprising:

(a) a flexible, integral fabric cover having four generally-square side walls and a top; wherein each side wall includes at least one window opening; and further *including a closable vertical opening along one vertical corner of said structure*; wherein the perimeter of each side wall and th etop [sic] is non-stretchable; and

(b) framework comprising five support members; wherein each said support member comprises four resilient leg members hingedly connected at one end to a central hub; wherein one said support member engages and supports a respective side wall in a taut condition; wherein one said support member engages and supports said top; and wherein said leg members connected to each said hub can be pivoted towards each other to collapse said structure.

('338 Patent, col. 4, ll. 36-52).  Claims 2-6 depend on claim 1.  Consequently, those claims are limited by the term "a closable vertical opening along one of said side edges."  Claims 8 and 9 depend on claim 7 and are limited by the term "a closable vertical opening along one vertical corner of said structure."

The plaintiff and defendant dispute the meaning of these claim limitations.  The plaintiff contends that these phrases encompass an opening of any shape having a predominately vertical dimension which is positioned along or adjacent to a side edge or vertical corner of the structure.  According to the plaintiff's construction, this claim language would cover a triangular flap extending into one side wall, so long as one side of the triangle is positioned along one side edge or vertical corner of the structure.  The defendant disputes that interpretation, arguing that the claim language, the specification, and the prosecution history show that a "closable vertical opening" means "a slit-like opening that runs straight up and down or perpendicular to the horizon."  Eastman further asserts that the ordinary meaning of "along one of said side edges" is "over the length of or on a line or course parallel and close to one of the side edges of the blind," and that the ordinary meaning of "along one vertical corner of said structure" is "over the length

of or on a line or course parallel and close to the vertical line formed where two side walls of the blind meet at an angle."

"It is well-settled that, in interpreting an asserted claim, the court should look first to the intrinsic evidence of record, *i.e.*, the patent itself, including the claims, the specification and, if in evidence, the prosecution history." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996); *see also Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995) (*en banc*), *aff'd*, 517 U.S. 370 (1996).  The words of the claims are of primary importance. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (*en banc*); *Vitronics*, 90 F.3d at 1582 (Fed. Cir. 1996).  "[T]he words of a claim 'are generally given their ordinary and customary meaning.'" *Phillips*, 415 F.3d at 1312 (quoting *Vitronics*, 90 F.3d at 1582).  "[T]he ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." *Phillips*, 415 F.3d at 1313.

Eastman submitted the declaration of Mr. Jeffrey A. Pestrue, its chief engineer. Mr. Pestrue is person with expertise in the design, development and production of hunting blinds, and he stated that the phrase "closable vertical opening" has no special meaning in the hunting blind industry.  (Pestrue dec. ¶ 5).  There is no other evidence on this point.

Resolution of this claim construction dispute involves the application of commonly understood words.  The parties have focused attention on the meaning of the word "vertical." "The common-sense understanding of 'vertical' or 'vertically' is that those words convey a sense of perpendicularity with respect to the surface of the earth." *Laser Diode Array, Inc. v. Paradigm Lasers, Inc.*, 114 F.Supp.2d 167, 172 (W.D.N.Y. 2000).  General purpose dictionary definitions, which are a type of extrinsic evidence, may be considered in the context of the

intrinsic evidence.  *See Phillips*, 415 F.3d at 1314-19.  The plaintiff cites *Merriam-Webster's Collegiate Dictionary* (10th ed. 1998) which includes the following definitions:   "perpendicular to the plane of the horizon or to a primary axis:  UPRIGHT . . . lying in the direction of an axis: LENGTHWISE."  That source also states, "Vertical suggests a line or direction rising straight upward toward a zenith."

When construing claims, "the context in which a term is used in the asserted claim can be highly instructive."  *Phillips*, 415 F.3d at 1314.  In the disputed phrases, "vertical" modifies "opening."  This context means that the opening itself must extend lengthwise, in a direction that is straight up and down or perpendicular to the plane of the horizon.

The claim language also requires that the closable vertical opening be along one of the side edges (claim 1) or along one vertical corner of the structure (claim 7).  The position of the opening is described throughout the patent.  The abstract states:  "One corner of the structure includes a vertical opening to permit ingress and egress from the structure."  The following statement appears in the summary of the invention:  "An openable doorway is positioned vertically at one corner of the blind or shelter to enable ingress and egress.  Closure means such as a zipper is used to close the opening."  ('338 Patent, col. 2, ll. 13-15).  The following statement appears in the detailed description of the invention:

> A zipper is incorporated in one corner of the structure where two side walls meet.  The zipper is stitched in place with non-stretchable thread.  The leg members must flex in order to enable the door opening to expand for ingress and egress.  When the zipper is in an open position, the fabric adjacent [to] the opening can be pulled slightly away from the opening (which results in widening of the opening as the pegs flex.)

(Col. 3, ll. 28-35).  In Figure 1, a vertical slit-like opening positioned at the corner of the blind is shown as element 5.  No other type of opening is mentioned in the patent.

The patent's prosecution history is also informative.  The application claims were allowed without amendment.  The Notice of Allowability included the following Examiner's Statement of Reasons for Allowance:

> The primary reason for the allowance of the claims is the claimed foldable tent structure having a cover which includes a top wall and 4 side walls and a zippered vertical opening at a cornered side edge, 5 frame members each has four resilient legs hingedly connected at one end to a central hub; each frame member engages and supports a respective side wall and the top wall in a taut condition; each leg is pivotable at the hub toward each other to collapse the tent structure.  Said tent structure is not shown or taught by the prior art of record.

(Def.'s Ex. A-2).  This statement demonstrates that the Examiner considered a vertical opening positioned at a cornered side edge to be a distinguishing feature of the invention.  Among the prior art patents cited as references in the '338 Patent are U.S. Patent No. 3,810,482 to Beavers (the "'482 Patent") and U.S. Patent No. 4,819,680 to Beavers ("the '680 Patent).  These patents disclose a cube-shaped collapsible tent structure having a hub-style framework similar to that of the plaintiff's invention.  One of the few distinctions between the plaintiff's invention and these prior art patents is that the plaintiff's invention has a vertical opening at a cornered side edge.

The plaintiff has provided the declaration of Rex E. Paulsen, Ph.D., P.E.  Mr. Paulsen is a registered professional engineer and has some expertise relating to collapsible tents and patents.  Mr. Paulsen's declaration constitutes extrinsic evidence, a category that is less significant than the intrinsic evidence.  *See Phillips*, 415 F.3d at 1317.  Mr. Paulsen's declaration suffers from errors and deficiencies and is not useful in ascertaining the meaning of the disputed terms.  In his discussion of the prosecution history, Mr. Paulsen dismissed the significance of Examiner's

-6-

Reasons for Allowance without any review of the prior art. Where he did address the '482 Patent, Mr. Paulsen mistakenly stated that the '482 Patent shows a three-sided tent, whereas the specification of the '482 Patent expressly states that the invention is not limited to a structure having three sides and a top. *See* '482 Patent, col 3, ll. 24-38 ("The frame 12 comprises a minimum of four and a maximum of six nearly identically constructed subframe assemblies . . . [in the preferred embodiment] the subframe assemblies which could be positioned in the entryway 18 as well as in the floor area are both left out."). Figure 2 of the '482 Patent shows a tent having four side walls and top, with a triangular entryway in one of the side walls. A similar drawing is shown in the '680 Patent. Mr. Paulsen failed to appreciate the full teachings of the Beavers patents and other references cited in the '338 Patent.

The language of the '338 Patent claims, the specification, and the prosecution history support the construction urged by Eastman. The term "a closable vertical opening" means "a slit-like opening that runs straight up and down or perpendicular to the plane of the horizon." "Along one of the side edges" means "over the length of or on a line or course parallel and close to one of the side edges of a wall of the blind." "Along one vertical corner of said structure" means "over the length of or on a line or course parallel and close to the vertical line formed where two side walls of the blind meet at an angle."

Infringement analysis requires comparison of the patented invention and the accused product on an element-by-element basis. *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 40 (1997). To establish infringement, the plaintiff must show that the accused product contains elements identical or equivalent to each claimed element of the patented invention. *Id.*

The entry and exit path for Eastman's Carbon Venture Blind is through a triangular-shaped zippered door flap cut into one of the four side walls of the blind. Mr. Pestrue described the Carbon Venture Blind's triangular door as follows:

> One opens the accused CARBON VENTURE BLIND by single handedly unzipping the zipper diagonally northeast from the bottom of and into the center of one of the side walls, then diagonally northwest, to the top of one of the side walls. The unzipping results in a loose door-flap that, when held to the side, creates a large triangular opening through which one may freely and easily enter or exit the blind.

(Pestrue dec. ¶ 15). This unzipping operation and the resulting triangular opening are shown in Exhibits 2 and 4 to Mr. Pestrue's declaration.

The Carbon Venture Blind does not literally infringe the claims of the '338 Patent. Its triangular flap opening is not a slit-like opening running straight up and down or perpendicular to the plane of the horizon. It is not positioned over the length of or on a line or course parallel and close to one of the side edges of a wall of the blind, and it is not positioned over the length of or on a line or course parallel and close to the vertical line formed where two side walls of the blind meet at an angle.

"A device that does not literally infringe a claim may nonetheless infringe under the doctrine of equivalents if every element in the claim is literally or equivalently present in the accused device." *Sage Prods., Inc. v. Devon Indus., Inc.*, 126 F.3d 1420, 1423 (Fed. Cir. 1997). An established test for equivalence is whether a substitute element in the accused product performs substantially the same function, in substantially the same way, to achieve the same result as an element of the claimed invention. *Hilton Davis*, 520 U.S. at 39-40; *Graver Tank &*

*Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 608 (1950). "Although equivalence is a factual matter normally reserved for a fact finder, the trial court should grant summary judgment in any case where no reasonable fact finder could find equivalence." *Sage Prods.,* 126 F.3d at 1423; *see Hilton Davis*, 520 U.S. at 39, n.8.

This case is one in which summary judgment of non-infringement is appropriate. The closable vertical opening of the claimed invention and the triangular flap opening of the Eastman Carbon Venture Blind perform the same function of permitting ingress and egress, but no reasonable fact finder could conclude that they perform that function in substantially the same manner or that they achieve substantially similar results. A user of the claimed blind must physically expand the vertical opening to enter or exit. This expansion is accomplished by pulling the fabric around the opening slightly away from the opening, which causes the ends of the leg members of the blind to flex. ('338 Patent, col. 3, ll. 28-35). Without such effort, the structure of the blind holds the sides taut and the opening closed. In contrast, when the triangular opening of the Eastman Carbon Venture Blind is unzipped, the resulting triangular flap may be pushed aside and one may enter and exit without having to flex or distort the legs of the sub-frame assemblies. (Pestrue dec. ¶¶ 13-15).

The claimed invention is primarily intended for hunters, and the evidence of record shows that this distinction is significant to those users. One major difference relates to safety. Hunters frequently carry backpacks, rifles, portable seats, and other equipment on their backs and shoulders. The typical method of carrying a firearm is to carry it on the shoulder. A hunter carrying a firearm in this manner, when squeezing through the slit-like opening of the claimed invention, is subject to a risk that the firearm may accidentally discharge if the bolt were to bang

against the hunter's body or equipment and move to an open position.  In contrast, one may freely and easily enter or exit the triangular opening of the Carbon Venture Blind while carrying equipment.  (Pestrue dec. ¶¶ 14-15).

The different door structures also achieve different results with respect to wind flap noise, a factor significant to those seeking to observe animals in the wild.  The self-closing opening of the claimed invention has the advantage of eliminating wind flap.  In contrast, the door of Carbon Venture Blind is subject to wind flap when the triangular flap is in the open position.  (Pestrue dec. ¶ 17).  The different door structures are also subject to different structural stresses.  In the claimed invention, the fabric around the opening and the zipper (if one is included) is subject to stretching forces from two adjacent side walls.  The triangular opening of the Carbon Venture Blin is created by a zipper positioned entirely within one wall.  The latter structure creates less stress on the zipper and the fabric around the opening.  This factor contributes to mechanical reliability.

Mr. Paulsen's declaration does not show any genuine questions of material fact with respect to equivalence.  Mr. Paulsen simply repeats the plaintiff's conclusory argument that the accused products are "knockoffs" of the claimed invention.  His declaration does not address any differences in the operation or results achieved by the different door styles.

The plaintiff's reliance on the doctrine of equivalents is misplaced for other reasons.  The doctrine of equivalents should not be given such broad play as to effectively eliminate a claim limitation.  *See Hilton Davis*, 520 U.S. at 29.  The requirement of "a closable vertical opening along one of said side edges" and the requirement of "a closable vertical opening along one

vertical corner of said structure" would be rendered meaningless if a triangular flapped opening extending sideways into a tent wall were considered an equivalent.

Furthermore, a patentee may not obtain, through the doctrine of equivalents, protection for designs that he could not have patented directly. *See Key Mfg. Group, Inc. v. Microdot*, 925 F.2d 1444, 1448 (Fed. Cir. 1991); *Wilson Sporting Goods Co. v. David Geoffrey & Assoc.*, 904 F.2d 677, 684 (Fed. Cir. 1990). "[S]ince prior art always limits what an inventor could have claimed, it limits the range of permissible equivalents of a claim." *Wilson Sporting Goods*, 904 F.2d at 684. The Beavers '482 Patent and '680 Patent show that a cube-shaped tent with a hub-style framework was known in the prior art. Other prior art patents show that a triangular flapped opening cut into a wall of a tent was well known in the art. *See* U.S. Patent No. 3,941,140 and U.S. Patent No. 4,026,312. In addition, U.S. Patent No. 4,077,417 to Beavers discloses that triangular openings may be positioned between tent struts in a tent cover supported by hub and strut subframe assemblies. *See* U.S. Patent No. 4,077,417, col. 5, ll. 3-17. The alleged equivalent is obvious in light of these prior art patents, or if not obvious at least foreseeable. The alleged equivalent does not involve any later developed technology. If Mr. Stumbo had intended to claim a hub-style tent having a triangular flapped opening cut into a side wall, he could have written claims to cover that alternative. The doctrine of equivalents does not allow recapture of subject matter excluded by a claim drafting decision. *See Planet Bingo, LLC v. Weingardt*, No. 05-1576, __ F.3d ___ , 2006 WL 3615302 at *6 (Fed. Cir. Dec. 13, 2006).

Based on the foregoing, it is

ORDERED that the motion for summary judgment by defendant Eastman Outdoors, Inc. is granted. The clerk will enter judgment declaring U.S. Patent No. 5,628,338 not infringed by

the defendant's CARBON VENTURE BLIND and dismissing the plaintiff's claims with

prejudice.

      Dated:  January 25, 2007

                                   BY THE COURT:

                                   s/Richard P. Matsch

                                   _____

                                   Richard P. Matsch, Senior District Judge